UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
KAREN BLAIR,

        *Plaintiff*,

      v.

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
---------------------------------X

**MEMORANDUM AND ORDER**

18-cv-4445(KAM)

**MATSUMOTO, United States District Judge:**

      Pursuant to 42 U.S.C. § 405(g), Karen Blair ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act ("the Act"), on the basis that plaintiff is not disabled within the meaning of the Act.  Plaintiff alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits.

      Presently before the court is defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") (ECF No. 23, Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings ("Def. Mem.") and plaintiff's affirmation in opposition to defendant's motion.  (ECF No. 24, Plaintiff's Affidavit/Affirmation in Opposition to Defendant's Motion ("Pl.

1

Aff.").)   For the reasons stated below, defendant's motion is
GRANTED.

**BACKGROUND**

## I.  Procedural History

On June 16, 2016, plaintiff Karen Blair filed an
application for Title II disability insurance benefits.  (*Id.*)
The date of alleged onset of plaintiff's disability is May 1,
2014, and plaintiff claims that she was disabled as a result of
an eye condition, foot condition, back condition, and arthritis
in the hand.  (ECF No. 25, Administrative Transcript ("Tr.")
132.)  On August 5, 2016, plaintiff's claim was denied.  (Tr.
61-66.)  On August 12, 2016, plaintiff requested a hearing
before an Administrative Law Judge ("ALJ").  (*see* Tr. 67-68.)
On November 9, 2016, plaintiff appeared and testified before ALJ
Martha Reeves.  (ECF No. 1, Complaint.)  Although informed of
the right to representation, plaintiff chose to appear and
testify without the assistance of an attorney.  (Tr. 10, 100.)
By a decision dated December 22, 2017, the ALJ determined that
plaintiff was not disabled within the meaning of the Act and was
thereby not entitled to benefits.  (Tr. 7-21.)

Plaintiff appealed the ALJ's decision to the Appeals
Council and, on June 5, 2018, the Appeals Council denied review
of the decision, thereby rendering the ALJ decision the final
decision in the case.  (Tr. 1-6.)  On August 6, 2018, plaintiff,

proceeding *pro se*, commenced the instant action in federal court and filed a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 and 2.) On August 7, 2018, the court granted plaintiff's motion to proceed *in forma pauperis*. (ECF No. 4, Order.) On December 28, 2018, defendant filed a motion to stay proceedings due to lapse in appropriations and on that same day the court granted defendant's motion. (ECF No. 9, Letter Motion to Stay Proceedings; Dkt. Order dated 12/28/2018.) On January 29, 2019, defendant filed a letter advising the court of the end of lapse in appropriations and sought approval of a proposed amended briefing schedule. (ECF No. 11, Letter Advising Court of End of Lapse of Appropriations.) On that same day, the court granted defendant's motion and lifted the stay. (Dkt. Order dated 1/29/2019.)

On June 17, 2019, plaintiff filed a motion for an extension of time to file an order to try to obtain legal representation. (ECF No. 14, Letter Motion for Extension of time to File.) The court directed defendant to provide its view on plaintiff's motion for an extension of time by July 1, 2019. (Dkt. Order dated 6/27/2019.) On July 2, 2019, defendant filed its letter in response to the court's order, and on that same day, the court extended plaintiff's deadline to file her opposition until September 2, 2019. (ECF No. 15, Letter in

Response to Court's June 27, 2019 Order; Dkt. Order dated 7/2/2019.)

On September 23, 2019, defendant filed a request for leave to file Commissioner's motion for judgment on the pleadings.  (ECF No. 18, Letter Motion for Leave to File Document.)  On September 30, 2019, plaintiff filed a motion for an extension of time to file an opposition to defendant's motion in order to obtain free legal counsel to assist in the completion of her brief.  (ECF No. 19, Letter Motion for Extension of Time to File.)  On October 8, 2019, the court denied defendant's motion for leave to file and granted plaintiff an extension of time, until November 11, 2019, to file her opposition.  (Dkt. Order dated 10/8/2019.)

On December 4, 2019, defendant filed a notice of motion and a memorandum of law in support of its motion for judgment on the pleadings, (ECF Nos. 22 and 23, Notice of Motion and Def. Mem.), and plaintiff filed an affidavit and affirmation in opposition to defendant's motion (ECF No. 24, Pl. Aff.).  In plaintiff's affirmation, plaintiff asserts that defendant's motion should be denied because "according to [the] letter from Social Security dated April 11, 2015, [she] was denied benefit because they claimed that [she[ did not furnish documents listed

4

[.]"[1]  (*Id.*)  However, plaintiff asserts that she resubmitted
those documents to the Social Security Office on July 26, 2018.
(*Id.*)  Although plaintiff's factual allegations were submitted
in an affirmation rather than a brief, courts in this circuit
have treated affirmations in opposition as a motion for judgment
on the pleadings.[2]

## II.   Medical and Non-Medical Evidence

On December 4, 2019, defendant submitted a statement
of Joint Stipulated Facts, which was not signed by plaintiff.
(ECF No. 23-3, Joint Stipulated Facts.)  Nevertheless, because
the Joint Stipulated Facts are generally supported by evidence
in the administrative record, the court has reviewed the record
and hereby incorporates the facts contained therein.

### a. Relevant Medical Evidence

On July 2, 2014, plaintiff received a general physical
examination by Harold Kerolle, M.D., at the Kings County
Hospital Center emergency room.  (Tr. 184.)  Plaintiff
complained of low back pain, ear pain, and a headache for the

---

[1] Plaintiff presently appeals from an unfavorable decision regarding her
application for disability and disability insurance benefits, submitted on
June 16, 2016.  (Tr. 10.)  The court notes that it is unclear whether the
SSA's letter dated April 11, 2015, which plaintiff attached to her
Affirmation, relates to plaintiff's June 2016 application.  (ECF No. 24, Pl.
Aff. at 1, 5.)
[2] *See, e.g.*, *Armstrong v. Colvin*, No. 12-CV-8126 VB, 2013 WL 6246491, at *1
(S.D.N.Y. Dec. 3, 2013); *Verdaguer v. Colvin,* No. 12-CV-6858 (VB), 2013 WL
6426931, at *2 (S.D.N.Y. Dec. 9, 2013).  *Cf. Rose*, 202 F. Supp. 3d 231
(E.D.N.Y. 2016) (considering affidavit in the context of a motion for
judgment on the pleadings).

past day.  (*Id.*)  Dr. Kerolle noted that plaintiff's constitutional, neurological, respiratory, cardiovascular, and gastrointestinal systems were within normal limits, and plaintiff was in "no apparent distress."  (*Id.*)  Dr. Kerolle diagnosed plaintiff with otalgia (ear pain) and headache and prescribed an analgesic.  (*Id.*)

On April 29, 2015, plaintiff was evaluated by Anuja Reddy, M.D., to determine if she was precluded from working. (Tr. 190.)  Dr. Reddy completed a biopsychosocial summary report and determined that plaintiff's back pain, left leg and left foot pain, and plaintiff's hyperlipidemia and anemia did not preclude employment.  (*Id.*)  Specifically, Dr. Reddy noted that plaintiff could work light jobs with flexible hours.  (*Id.*)

On May 19 and June 13, 2015, plaintiff went to the Lincoln Medical and Mental Health Center emergency room complaining of pain in her foot.  (Tr. 187-88.)  On both visits, plaintiff was examined and discharged with instructions to follow up with her primary care doctor or return to the emergency room if the pain worsened.  (*Id.*)

On July 23, 2015, plaintiff went to the Kings County emergency room complaining of pain in her left foot.  (Tr. 185.) Plaintiff was examined and found to have a stable gait, full range of motion in all extremities and a non-tender cyst on her foot.  (*Id.*)  Plaintiff was diagnosed with a ganglionic cyst and

6

was advised to see a podiatrist; an examination of plaintiff's systems revealed otherwise normal findings. (*Id.*)

On July 27, 2015, plaintiff was treated by Tanya Jackson-Soufiane, D.P.M., at the Kings County Podiatry Clinic for her left foot complaints. (Tr. 169.) Plaintiff stated that the pain had been present since December 2014 and it worsens when she walks or wears shoes that press on a raised bump on her foot. (*Id.*) Dr. Jackson-Soufiane ordered x-rays of the left foot, which displayed intact structures, preserved joint spaces, heel spurs, and mild soft tissue swelling over the mid-foot. (Tr. 167, 172.) Dr. Jackson-Soufiane instructed plaintiff to take over-the-counter nonsteroidal anti-inflammatory drugs (NSAIDS) and rest her foot as needed. (Tr. 169.)

On September 29, 2015, plaintiff returned to Dr. Jackson-Soufiane for a follow-up visit. (Tr. 167.) Plaintiff stated that her foot pain "comes and goes." (*Id.*) Dr. Jackson-Soufiane found that plaintiff had no pain on palpation over the mid-foot, and no edema or erythema. (*Id.*) The x-rays showed degenerative joint disease of the mid-foot. (*Id.*) Plaintiff was advised to follow up in three months. (*Id.*)

On July 29, 2016, at the request of the defendant, plaintiff underwent an internal medicine examination by Vinod Thukral, M.D. (Tr. 199-202.) Plaintiff stated that she had a history of back pain since an injury in 2001, bilateral foot

7

pain since 2010, anemia since October 2014, and decreased visual
acuity since 2008.  (Tr. 199.)  Additionally, plaintiff stated
that despite these conditions, she was still able to work as a
real estate agent and manage property that she owned 24 hours a
day, seven days per week.  (*Id.*)  Dr. Thukral noted "[s]he does
all these activities without any limitations." (*Id.*)  Dr.
Thukral examined plaintiff and observed that she was in no acute
distress, had a normal gait and stance, and could walk on her
heels and toes without difficulty.  (Tr. 200.)  Plaintiff did
not need help changing for the examination or getting on and off
the examination table; she was able to rise from the chair but
complained of pain in the lower back and both feet.  (*Id.*)
Plaintiff declined to squat due to pain.  (*Id.*)  She had full
range of motion of the lumbar spine, shoulders, elbows,
forearms, wrists, hips, knees, ankles, and feet.  (Tr. 201.)
Dr. Thukral opined that plaintiff had "no limitations for
sitting, standing, bending, pulling, pushing, lifting, carrying,
or any other such related activities." (Tr. 202.)

On September 19, 2016, plaintiff was treated by Harold
Kerolle, M.D., at the Kings County emergency room for right-
sided sciatica and bilateral foot pain.  (Tr. 252.)  She was
given an analgesic and muscle relaxant.  (*Id.*)  She was
discharged that same day and was instructed to follow up in the
spine clinic.  (*Id.*)

8

On October 29, 2016, plaintiff was treated by Joseph
Kozhimala, M.D., at the Kings County emergency room for
complaints of right-sided sciatica. (Tr. 253.) She was
discharged that same day and was instructed to apply heating
pads and use pillows for propping while she sleeps. (*Id.*)

On November 28, 2016, plaintiff again was seen by Dr.
Kozhimala at the Kings County emergency room for complaints of
damage to her teeth. (Tr. 254.) She was discharged that same
day and was instructed to follow up in the dental clinic. (*Id.*)

On December 28, 2016, plaintiff was seen by Emilia
Rebello, M.D., at the Kings County emergency room for complaints
of tooth pain. (Tr. 255.) Dr. Rebello noted that during the
last visit, plaintiff was told that she would need a tooth
extraction, but she never had it done. (*Id.*) Dr. Rebello
examined plaintiff and noted that her right premolars had
disappeared and only the roots were visualized. (*Id.*) Dr.
Rebello instructed plaintiff to apply triamcinolone twice a day
and to follow up in the dental clinic. (*Id.*)

On March 28, 2017, plaintiff again was seen by Dr.
Kerolle at the Kings County emergency room for complaints of
back pain for that past week. (Tr. 257, 263.) Plaintiff
requested x-rays of her lower back and legs, but Dr. Kerolle
explained that x-rays were not indicated. (Tr. 263.) Plaintiff
"became upset, refusing to be examined and requesting to see

9

another Doctor; finally she asked to be given her discharge paper." (*Id.*)

On April 4, 2017, plaintiff was treated by Marcel Bayol, M.D., a physical medicine and rehabilitation specialist, at Kings County Hospital Center. (Tr. 236-37.) Plaintiff stated that she had pain in her lower back that radiated down her right leg, and the pain was the worst when getting out of bed but alleviated by walking. (Tr. 236.) While examining plaintiff, Dr. Bayol noted that plaintiff had an antalgic gait and reduced range of motion of the lumbar spine. (Tr. 237.) Dr. Bayol also noted that plaintiff had no tenderness to palpation, negative straight leg raising, full motor strength, and intact sensation. (*Id.*) Dr. Bayol diagnosed plaintiff with lumbago and recommended a course of physical therapy. (*Id.*) On that same day, Dr. Bayol completed a form indicating that plaintiff was temporarily unemployable until she completed her physical therapy. (*Id.*) On April 28, 2017, Dr. Bayol wrote a letter on plaintiff's behalf, stating: "Ms. Blair was seen in the rehabilitation medicine at Kings County Hospital on 4-4-17 and she was referred to Physical Therapy for conservative management of low back pain. She is temporarily disabled from working for the next eight weeks." (Tr. 221.)

On April 20, 2017, plaintiff was treated by Nicole Kennedy-Pauls, M.D., at the Kingsbrook Jewish Medical Center

emergency room for complaints of right sided back and buttocks pain. (Tr. 206-08.) Dr. Kennedy-Pauls diagnosed plaintiff with intervertebral disc disorder and prescribed her with cyclobenzaprine and ibuprofen. (Tr. 206.) Dr. Kennedy-Pauls also recommended that plaintiff obtain a lumbar MRI and discharged her that same day. (*Id.*)

On May 9, 2017, plaintiff was treated by Debra Anderson, M.D., at the Kings County emergency room for complaints of back and right hip pain. (Tr. 203.) Right hip x-rays were performed, and they showed no acute findings. (Tr. 203, 241.) The attending radiologist noted that there was mild right hip degenerative arthrosis with associated subchondral sclerosis and small acetabular and femoral osteophytes. (Tr. 241.) Dr. Anderson diagnosed plaintiff with sciatica and hip pain and prescribed ibuprofen, cyclobenzaprine, and warm compresses and discharged her that same day. (Tr. 203.)

### b. Relevant Non-Medical Evidence

Plaintiff was born in 1972 and was 45 years old at the time of the ALJ's decision. (*see* Tr. 7, 121.) She completed college on November 15, 2015. (Tr. 133.) Plaintiff has worked as a real estate agent from 2004 through 2016. (Tr. 123.) While working as a real estate agent from 2010 to 2012, plaintiff was required to walk and stand for eight hours a day, frequently lift and carry items weighing less than ten pounds,

11

reach for 30 minutes a day, and write, type or handle small objects for one hour per day.  (Tr. 127.)

Plaintiff's real estate job from 2014 to 2016 required her to lift less than ten pounds frequently, sit for three hours, stand for one hour, and walk for two hours.  (Tr. 128.) As a property owner and manager from 2008 to the present, plaintiff was required to walk one hour, stand for eight hours, sit for four hours, handle, grab or grasp for two hours and reach for 45 minutes per day.  (Tr. 129.)  Additionally, she had to ensure that the property's hallway and basement were kept clean and the garage area was maintained in proper, sanitary condition.  (*Id.*)  Plaintiff stated that she had to stop working on December 18, 2015, because "[m]y insurance does not cover implants, so that [was] one of the major set back in my employment.  [A]s a result I am unable to find an employer that will accommodate my current medical situation."  (Tr. 132.)

On June 29, 2016, plaintiff completed a Function Report.  (Tr. 138-146.)  Plaintiff stated that she was living in a shelter with family at the time and she was able to perform household chores, but she needed to "carefully gain [her] composure before" doing so.  (Tr. 139.)  She stated she was able to dress and groom herself, but it took longer than usual because of pain in her hand and legs.  (Tr. 140.)  She reported she was able to walk for twenty minutes before stopping to rest,

ride in a car and travel by public transportation independently. (Tr. 142, 145.)  Plaintiff reported that her hobbies included swimming, playing volleyball, walking, reading, and listening to music; however she did not engage in these hobbies often, and when she did, she engaged in them "gently" out of concern that they would cause pain in her back.  (Tr. 143.)  Plaintiff also stated she drastically reduced her participation in social activities to avoid a recurrence of her symptoms.  (Tr. 144.) She also stated that she was unable to lift heavy equipment, could not stand, sit, or walk for too long, and could not kneel. (*Id.*)  She must wear orthotics to reduce pain in her feet.  (Tr. 145.)  Plaintiff stated that she was able to follow spoken and written instructions and had no problems getting along with people in authority or with her memory.  (Tr. 146.)

### c. Plaintiff's Administrative Hearing

On November 9, 2017, plaintiff testified at her administrative hearing that she had intermittent back pain, which radiated to her foot and had pain in her mouth due to broken and missing teeth.  (Tr. 32-33, 35-36.)  She testified that the pain interfered with her concentration for 40 percent of the workday.  (Tr. 35-36.)  She testified that she could stand for about 30 minutes at a time, sit for about 20 minutes, and lift five to ten pounds.  (Tr. 34-35.)  Additionally, she testified that she was able to work through the pain, but she

felt that her dental appearance was an impediment to obtaining
work and working around others.  (Tr. 47-51.)  She testified
that she had worked in real estate and managed a three-family
property that she owned up until the year before the hearing.
(Tr. 36-38.)  She stated that she earned $7,037.00 in 2014,
$8,034.00 in 2015, and $10,384.00 in 2016.  (Tr. 38-39.)

      At the hearing, Christina Boardman, a vocational
expert ("VE") testified as well.  (Tr. 43-51; *see* Tr. 162-64.)
The ALJ asked the VE whether a hypothetical individual who had
the following restriction to a range of light work could do
plaintiff's past work or any other work: the hypothetical
individual could stand for 30 minutes at a time, sit for 20
minutes at a time, lift five to ten pounds, and was required to
be off-task five to ten percent of the day due to interference
with concentration.  (Tr. 43-44.)  The VE testified that the
hypothetical individual would be able to do plaintiff's past
work as a real estate agent, DOT 250.357-018.  (*Id.*)  Further,
the VE testified that the hypothetical individual would also be
able to do the sedentary jobs of a charge account clerk, DOT
Code 209.587-014, with 32,000 such jobs existing in the national
economy, and an order clerk, DOT Code 209.567-014, with 17,000
jobs existing in the national economy.  (Tr. 46-47.)

    **d. Evidence Submitted to the Appeals Council**

Following the ALJ's December 22, 2017 decision, plaintiff submitted additional evidence to the Appeals Council. (Tr. 23-27.)  Plaintiff submitted a December 26, 2017 letter from Otis Jones, M.D., from Brightpoint Health, stating: "The results of the test that you had done recently were abnormal. Please call the office at your earliest convenience in order to schedule further evaluation." (Tr. 27.)  However, the letter did not indicate which test was performed or what the results were.  (*Id.*)  Further, plaintiff submitted a February 20, 2018 note from ModernMD Urgent Care Center, stating that she was seen on that date for complaints of right hip pain.  (Tr. 25.) Plaintiff was prescribed Naprosyn, a non-steroid anti-inflammatory drug, and cyclobenzaprine, and advised to see an orthopedist.  (*Id.*)  Plaintiff also submitted notices confirming that she had appointments at the Kings County Rehabilitation Clinic on February 26, 2017 and March 23, 2017.  (Tr. 23-24.)

## LEGAL STANDARD

### a. Substantial Evidence or Legal Error

Under Rule 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes 'that no material issue of fact remains to be resolved and that [she] is entitled to judgment as a matter of law.'"  *Rose v. Comm'r*, 202 F. Supp. 3d 231, 238 (E.D.N.Y. 2016) (quoting *Guzman v. Astrue*, No. 09-CV-3928 (PKC), 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011).

15

Due to plaintiff's *pro se* status, the court holds her pleadings to "less stringent standards than formal pleadings drafted by lawyers," and the court liberally construes plaintiff's pleadings "to raise the strongest arguments that they suggest." *Rose*, 202 F. Supp. 3d at 239 (internal quotation marks and citation omitted).

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). When an ALJ does not fully develop the factual record, the ALJ commits legal error. *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999). "A remand by the court for further proceedings is appropriate

16

when the Commissioner has failed to provide a full and fair
hearing, to make explicit findings, or to have correctly applied
the . . . regulations." *Rose*, 202 F. Supp. 3d at 239.
"[E]specially in a *pro se* case, remand for further
administrative proceedings is appropriate 'where there are gaps
in the administrative record,' because it is the court's duty to
determine whether the 'ALJ adequately protected the rights of a
*pro se* litigant by ensuring that all of the relevant facts are
sufficiently developed and considered.'" *Id.* (quoting *Rosa*, 168
F.3d at 82.

Before determining whether the Commissioner's final
decision is supported by substantial evidence under 42 U.S.C. §
405(g), "the court must first be satisfied that the ALJ provided
plaintiff with 'a full hearing under the Secretary's
regulations' and also fully and completely developed the
administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM),
2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting
*Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755
(2d Cir. 1982)); *see also Rodriguez v. Barnhart*, No. 02-CV-5782
(FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov 7, 2003).  The
spirit of the administrative review process is beneficent, not
adversarial.  *See* 20 C.F.R. § 405.1(c)(1) ("In making a
determination or decision on your claim, we conduct the
administrative review process in a non-adversarial manner.");

17

*Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("The model is investigatory, or inquisitorial, rather than adversarial").

In social security appeals, the court must base its review "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* "[R]emand based on the need to review new evidence requires '(1) a showing that there is new and material evidence and (2) good cause for the failure to incorporate that evidence into the record in a prior proceeding.'" *Rose*, 202 F. Supp. 3d at 241 (quoting *Skrodzki v. Comm'r*, No. 11-CV-5173 (MKB) 2013 WL 55800, at *4 (E.D.N.Y. Jan. 3, 2013)).

New evidence is considered material if "(1) it is relevant to the claimant's condition during the time period for which benefits were denied, (2) it is probative, and (3) there is a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Williams v. Comm'r*, 236 F. App'x 641, 644 (2d Cir. 2007) (internal quotation marks and citation omitted). For example, "subsequent evidence of the severity of a condition

suggest[ing] that the condition may have been more severe in the past than previously thought" could be material.  *Id.*

"Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion.  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

**b. Five Step Sequential Evaluation**

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant meets this requirement when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

19

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw,* 221 F.3d at 131-32.  The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's conditions meet the Act's definition of disability. *See* 20 C.F.R. § 404.1520.  During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 4040.1523.  Further, if the Commissioner does not find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).

At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity, age, education, and work

experience, the claimant is "able to engage in gainful
employment within the national economy." *Sobolewski v. Apfel*,
985 F. Supp 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in
determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings]; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability . . . ; and (4) the claimant's educational
background, age, and work experience.'" *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (*quoting Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

## DISCUSSION

In the Commissioner's Rule 12(c) motion for judgment
on the pleadings, defendant contends that ALJ Martha Reeves'
residual functional capacity ("RFC") finding was supported by
substantial evidence and appropriately concluded that plaintiff
could perform light work.  (ECF No. 23, Def. Mem.)  Further,
defendant asserts that substantial evidence supports the
Commissioner's decision that plaintiff can perform her relevant
past work and other jobs in the national economy, and thus is
not disabled under the Act.  Rather than submitting a
memorandum, plaintiff submitted an affidavit[3] opposing the

---

[3] As noted in the Commissioner's Notice Pursuant to Local Rules 12.1 and 56.2,
plaintiff is entitled to file sworn affidavits based on personal knowledge,
should the court treat the Commissioner's motion as a motion for summary

Commissioner's motion, dated November 11, 2019, asserting that the Administration "did not originally denied [sic] me benefit under Title II of the Act because I was not disabled at the time of application." (Pl. Aff. at 1.)  Plaintiff asserts that her application was denied "because they claimed that I did not furnish documents listed on the abovementioned correspondence," though she does not attach copies of  the missing documents – *i.e.* her birth certificate, I551 Card, and evidence of self employment - or explain why those documents would have affected the Administration's disability finding. (*Id.*)  Plaintiff apparently asserts that she has resubmitted the outstanding documents and that she had previously submitted them, but they became detached from the rest of her application. (*Id.* ¶ 4.) Defendant did not file a reply memorandum.

The allegations raised in plaintiff's affidavit generally consist of background information, including her work experience and the alleged reasons for her back pain, as well as conclusory allegations that she "was unlawfully denied benefit from the Social Security Administration." (*See generally* ECF No. 24.)  Because plaintiff has not shown that there is any "new and material evidence" that was not considered by the ALJ, the

---

judgment. (ECF No. 23-1, Notice Pursuant to Local Rules 12.1 and 56.2.)  The court has considered the affidavit, finds that it does not raise material factual allegations, and thus decides the instant motion as seeking judgment on the pleadings pursuant to Rule 12(c). *Rose*, 202 F. Supp. 3d 231 (E.D.N.Y. 2016).

court respectfully declines to order additional evidence to be taken before the Commissioner, pursuant to 42 U.S.C. § 405(g). *Rose*, 202 F. Supp. 3d at 241; *Williams*, 236 F. App'x at 644.

For the reasons set forth below, the court finds that the ALJ's decision was supported by substantial evidence and, accordingly, the court grants the Commissioner's motion.

## I.   The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled is mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since May 1, 2014, the alleged onset date. (Tr. 12.)

At step two, the ALJ found that plaintiff suffered from severe impairments of intervertebral lumbar disc disorder and degenerative joint disease. (Tr. 13.)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id*.)

At step four, the ALJ found that plaintiff had the RFC to perform light exertional work. (*Id*.) In arriving at this RFC, the ALJ states that plaintiff "can stand at one time for a half hour, sit at one time for twenty minutes, lift 5 to 10

23

pounds, sit stand option, and will be off task for 5 to 10 percent of the day due to interference with concentration." (*Id.*)  The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the above-alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 14.)

At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy, specifically, the past relevant work as a real estate agent, and as a supervisor janitorial.  (Tr. 17.)  Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 416.920(g), since May 1, 2014 through the date of the hearing.  (*Id.*)

**II.  Following a Fair Hearing and Adequate Development of the Record, the ALJ Rendered a Decision That Was Supported by Substantial Evidence.**

Based on the record before the court, there is no reason to doubt that the ALJ provided plaintiff with a fair hearing and adequately developed the record.  For example, ALJ Reeves specifically asked plaintiff at the hearing whether she was sure she did not want to have counsel assist her.  (Tr. 33.) Plaintiff responded, "Yeah, because I know my situation.  I

24

don't have to have counsel to represent my medical situation. Whether the decision is in my favor or not, I have my medical situation.  All right?"  (*Id.*)

Further, at the administrative hearing, the ALJ posed numerous questions to plaintiff to explore her functional limitations and the severity of her impairments.  At various points during the hearing, plaintiff's testimony detracted from the severity of her impairments.  *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-23 (2d Cir. 2010) (summary order) (citing plaintiff's testimony as substantial evidence supporting ALJ's findings); *Suarez v. Comm'r of Soc. Sec.,* No. 09 Civ. 2868, 2009 WL 874041, at *9 (S.D.N.Y. Mar. 26, 2009) (the plaintiff's testimony can constitute substantial evidence supporting ALJ's findings).  For example, plaintiff testified that her pain "comes and goes" and she "push[es] through the pain." (Tr. 33.)  Plaintiff further stated that she was told to go to therapy, but instead decided to "d[o] my own stuff . . . I did my own physical therapy." (*Id.*)  Plaintiff testified that she could stand for half an hour at a time and sit for 20 minutes at a time.  (Tr. 34.)  Plaintiff also testified that she could lift a gallon of milk, or between five and ten pounds. (Tr. 35.)

Additionally, non-medical evidence, such as activities of daily living, can satisfy the substantial evidence test.  In

plaintiff's June 2016 Function Report, she indicated several
activities that she could engage in.  (Tr. 15, *see* Tr. 143.)
She stated that she could travel independently by walking and
taking public transportation, shop at stores for food and
clothes, and attend church weekly.  (Tr. 142-43.)  Additionally,
she also engaged in activities such as swimming, playing
volleyball, and walking from time to time.  (Tr. 143.)  The
Second Circuit has found that light work includes the activities
that plaintiff stated.  *See Cichocki v. Astrue*, 729 F.3d 172,
178 (2d Cir. 2013) (finding that claimant's activities, such as
walking her dogs and cleaning her house, equated to a residual
capacity to perform light work).  Further, as noted above,
plaintiff testified that her pain "comes and goes," (Tr. 34.)
and she "will work through the pain."  (Tr. 49.)  She also
stated that one of her biggest impediments to working is her
dental issues and the physical appearance of her teeth.  (Tr.
35-36, 47-48.)

        Plaintiff also testified that she worked in real
estate and owned a three-family property. (Tr. 35, 37.)  She
testified that she earned $7,037.00 in 2014, $8,034.00 in 2015,
and $10,284.00 in 2016, from working in real estate along with
income from her property.  (Tr. 38-39.)  Although plaintiff
stated in her June 21, 2016 Disability Report that she stopped
working on December 18, 2015, (Tr. 132), this statement is

contradicted by her Work History Report, in which she reported
managing her property, from 2008 through the present, (Tr. 123,
129), as well as her statement to consultative examiner Dr.
Thukral that she worked 24 hours a day, seven days per week at
her property. (Tr. 199.)  Although plaintiff asserts that she
could not work beginning December 18, 2015, evidence in the
record shows that she was able to work enough to report
significant earnings.  (Tr. 14, 123, 129.)

Although the ALJ found that plaintiff's work was not
substantial gainful activity, she still properly considered it
in determining that plaintiff had the ability to work.  20
C.F.R. § 404.1571 ("Even if the work you have done was not
substantial gainful activity, it may show that you are able to
do more work than you actually did.")  *See also Rivers v.
Astrue,* 280 F. App'x 20, 23 (2d Cir. 2008) (summary order) (the
claimant's work did not meet the threshold for substantial
gainful activity, but he worked at levels consistent with light
work).

The ALJ also relied on medical evidence in the record
to formulate her RFC finding.  (Tr. 16.)  The ALJ assigned great
weight to the opinion of consultative examiner Dr. Thukral,
which was supported with an explanation and consistent with the
medical evidence of record.  (Tr. 16; 20 C.F.R. § 404.1527(c)(3)
("[t]he better an explanation a source provides for the opinion,

the more weight [the ALJ] will give that opinion").) Dr.
Thukral opined that plaintiff had "no limitations for sitting,
standing, bending, pulling, pushing, lifting, carrying, or any
other such related activities." (*Id.*) Dr. Thukral found that
plaintiff was in no acute distress, had a normal gait and stand,
and could walk on her heels and toes without difficulty. (Tr.
15, 200-02.) Dr. Thukral also noted that plaintiff did not use
an assistive device, and she did not need help in changing for
the examination or getting on and off the examination table.
(Tr. 15, 200.)

In addition, the ALJ found that Dr. Thukral's opinion
was consistent with the other evidence from the record. (Tr.
16; 167 (treatment records stating that plaintiff's "pain comes
and goes," x-ray of left foot showed bone structures were
intact, mild soft tissue swelling, and heel spurs).) *See* 20
C.F.R. § 404.1527(c)(4) ("[g]enerally, the more consistent an
opinion is with the record as a whole, the more weight we will
give to that opinion"). Not only was Dr. Thukral's opinion
consistent with plaintiff's daily activities, it was also
consistent with the other examinations in the record.
Specifically, a July 2014 emergency room examination for back
and head pain indicated that plaintiff was within normal limits.
(Tr. 14; *see* Tr. 124.) A July 2015 emergency room examination
for foot pain showed a stable gait, full range of motion in all

28

extremities, and a non-tender cyst on her foot.  (Tr. 15; *see* Tr. 185.)  An April 2017 examination showed negative straight leg raising, full motor strength, and intact sensation.  (Tr. 237.)  When plaintiff was seen at the Kings County Hospital in July 2015 for left foot pain, and in April and May 2017 for sciatica pain, on every occasion, no surgical procedures were performed, and she was treated with cyclobenzaprine and ibuprofen and discharged.  (Tr. 180-185, 199-202, 203-223.)

Based on the foregoing, the court finds that the ALJ's RFC finding, that plaintiff can perform a range of light work, was supported by substantial evidence in the record.

### III. The ALJ Correctly Concluded that Plaintiff Could Perform Her Past Relevant Work or Other Work in the Economy

After determining that plaintiff could perform a range of light work, the ALJ proceeded to determine whether plaintiff could perform her past relevant work.  (Tr. 17.)  If a claimant is found to be able to perform past relevant work, then the claimant may be found not disabled.  SSR 82-61, 1982 WL 31387 (Jan. 1, 1982).   The ALJ appropriately relied on the testimony of the VE to find that plaintiff could perform her past work as a real estate agent as it was generally performed in the national economy.  (Tr. 17; *see* Tr. 43-44.)  A VE may be used to ascertain how a job is performed in the national economy.  SSR 82-61, 1982 WL 31387 at *2.  The ALJ also concluded that

plaintiff could perform her past work, which was supported by evidence including plaintiff's description of her real estate job, and plaintiff's self-described ability to lift less than ten pounds, sit for three hours, stand for one hour and walk for two hours.  (Tr. 128.)

Further, the ALJ made an alternative finding that plaintiff could perform other work in the national economy. (Tr. 18.)  An ALJ may rely on the opinion of the VE when the RFC in the hypothetical posed to the VE is supported by substantial evidence.  *See Salmini*, 371 F. App'x at 114 (holding that the ALJ correctly posed the hypothetical question to the VE when that hypothetical was based on the ALJ's correct RFC evaluation).  Here, where the ALJ's RFC finding was supported by substantial evidence, the ALJ correctly relied on the VE's testimony that a hypothetical individual with that RFC and plaintiff's vocational factors could work as a charge account clerk and order clerk.  (Tr. 18; *see* Tr. 46-47.)  Therefore, the court finds that the ALJ correctly concluded that plaintiff could perform past relevant work or other work in the economy and, thus, was not disabled under the Act.

## CONCLUSION

For the foregoing reasons, the court finds that the Commissioner's conclusion that plaintiff was not disabled, within the meaning of the Act, since May 1, 2014, was supported

by substantial evidence in the record.  Accordingly, defendant's

Motion for Judgment on the Pleadings is GRANTED.  The Clerk of

Court is respectfully directed to enter judgment for the

defendant and close this case.  The court certifies pursuant to

28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and

Order would not be taken in good faith and, therefore, *in forma*

*pauperis* status is denied for the purpose of any appeal.

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Defendant is respectfully directed to mail a copy of this

Memorandum and Order and the judgment to the *pro se* plaintiff,

and to note service on the docket.

**SO ORDERED.**

DATED:      July 7, 2020
            Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge